# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

KA WEST,

        Plaintiff,

   v.

ALASKA AIRLINES, INC.,

        Defendant.

Case No. 3:18-cv-00102-SLG

## ORDER RE MOTION TO DISMISS

Before the Court at Docket 8 is Defendant Alaska Airlines, Inc.'s Motion to Dismiss. Plaintiff Ka West opposed at Docket 14. Alaska Airlines replied at Docket 18. Oral argument was held on August 23, 2018, at Anchorage, Alaska before Judge Sharon L. Gleason.[1]

## BACKGROUND

Alaska Airlines employed Ms. West as a customer service agent beginning in January 2007.[2] The terms and conditions of Ms. West's employment were governed by a Collective Bargaining Agreement ("CBA") negotiated by Ms. West's union, the International Association of Machinists and Aerospace Workers, pursuant to the federal Railway Labor Act ("RLA").[3] The CBA contains disciplinary procedures for employees and grievance procedures for review of disciplinary decisions and terminations.[4] It also

---

[1] Docket 26 (Minute Entry).

[2] Docket 1 (Complaint) at 3, ¶ 9.

[3] Docket 9 (Aff. of Misty Villastrigo) at 2, ¶ 4; *see* 45 U.S.C. § 151 *et seq*.

[4] Docket 9-1 (CBA) at 8, 49, 50–57.

includes provisions related to vacation and sick leave.[5]  The CBA incorporates Alaska

Airlines' system regulations and gives the company the right to change these provisions

at any time so long as they are not inconsistent with the CBA.[6]  The system regulations

include an "attendance reliability" program and additional policies and procedures related

to employee leave, including Family and Medical Leave Act ("FMLA") leave.[7]  The CBA

also establishes a three-step grievance procedure for review of employee terminations.[8]

The first two steps are hearings between Alaska Airlines and the terminated employee,

conducted by a representative of Alaska Airlines.[9]  If the grievance is not resolved through

either of the first two steps, the employee's union can elect to submit the grievance for

binding arbitration before the System Board of Adjustment, a body consisting of a union

member, an Alaska Airlines representative, and a neutral third member.[10]

Ms. West's Complaint alleges as follows:

In 2012, Ms. West was diagnosed with endometriosis.[11]  As a result of this

condition, she underwent surgery in January 2013.[12]  Ms. West took approximately one

month of FMLA leave following the surgery; when she returned, she went on light duty.[13]

---

[5] Docket 9-1 at 40–45.

[6] Docket 9-1 at 5–6.

[7] Docket 9-2 (System Regulations) at 15–18, 3–14, 26–42.

[8] Docket 9-1 at 50–57.

[9] Docket 9-1 at 50.

[10] Docket 9-1 at 53.

[11] Docket 1 at 3, ¶ 13.

[12] Docket 1 at 3, ¶ 14.

[13] Docket 1 at 3, ¶¶ 14, 15.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 2 of 40

In July 2015, Ms. West began experiencing "intermittent, severe pain" in her left ovary.[14] On February 5, 2016, Ms. West asked her supervisor for an accommodation for when she experienced these symptoms. Specifically, she asked leave to "take off a few days or a month as needed, take regular breaks when her symptoms flared up, and avoid lifting heavy objects."[15] Ms. West alleges that Alaska Airlines "repeatedly refused" to make reasonable accommodations.[16] She also alleges that Alaska Airlines "failed to engage in the interactive process" and "continued to counsel her on taking time off" despite the fact that she had significant unused leave.[17]

Ms. West applied for FMLA leave for her symptoms on March 2, 2016, but that request was denied on or about March 17, 2016.[18] She re-applied that same day; she applied again in September 2016.[19] On May 18, 2016, Ms. West's endometriosis symptoms caused her to leave work early.[20] Alaska Airlines approved Ms. West's FMLA request for the May 18, 2016 leave in October 2016.[21] However, Ms. West's Complaint alleges that Alaska Airlines "refused to change the leave taken on May 18, 2016, to FMLA leave even though it was eventually approved as FMLA leave."[22]

---

[14] Docket 1 at 4, ¶ 16.

[15] Docket 1 at 4, ¶ 18.

[16] Docket 1 at 4, ¶ 20.

[17] Docket 1 at 4, ¶ 20.

[18] Docket 1 at 4, ¶¶ 23–24.

[19] Docket 1 at 5, ¶ 25.

[20] Docket 1 at 5, ¶ 26.

[21] Docket 1 at 5, ¶ 30.

[22] Docket 1 at 5, ¶ 31; Docket 9-3 (Notice of Discipline or Discharge).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 3 of 40

On January 31, 2017, Alaska Airlines terminated Ms. West's employment.[23]  A Notice of Discipline or Discharge completed by the airline indicated that the termination was based on "unsatisfactory attendance."[24]  The document listed five absences during the preceding year, one of which was the May 18, 2016 absence.  Ms. West alleges that she had taken leave on one day to attend a funeral and that her supervisor told her the leave would be approved.[25]  She acknowledges that she "had a couple of minor instances when she reported to work on-time but forgot her badge not allowing her to clock in on-time," but alleges that "she was terminated for taking leave when her symptoms flared up and for applying for and requesting that she be given leave under FMLA."[26]

Ms. West filed a grievance through her union challenging the termination.[27]  The first two steps of the grievance process—the initial and secondary hearings before an Alaska Airlines representative—took place in February and April 2017.[28]  Alaska Airlines' representative denied the grievance at each hearing.  Ms. West's union informed her that it declined to submit the grievance for binding arbitration before the System Board of Adjustment.[29]

In approximately September 2017, Ms. West filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC").[30]  Alaska

---

[23] Docket 1 at 5, ¶ 31.

[24] Docket 9-3.

[25] Docket 1 at 6, ¶ 34.

[26] Docket 1 at 6, ¶ 35.

[27] Docket 9-4 (First Step Grievance Decision).

[28] Docket 9-4; Docket 9-5 (Second Step Grievance Decision).

[29] Docket 9-4; Docket 9-5; Docket 14-3 (Letter from Jeffrey Tobius to Ka West).

[30] Docket 10-1 (Notice of Charge of Discrimination) at 2.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 4 of 40

Airlines received a "Notice of Charge of Discrimination" from the EEOC, which stated that "[a] perfected charge (EEOC Form 5) will be mailed to you once it has been received from the Charging Party."[31]   But Alaska Airlines never received a perfected charge.[32]   On January 25, 2018, the EEOC sent Ms. West and Alaska Airlines a "Dismissal and Notice of Rights" indicating that it had investigated Ms. West's charge but was unable to conclude that Alaska Airlines had violated the Americans With Disabilities Act As Amended ("ADAAA").[33]  The EEOC then closed its file on the charge and issued a right to sue notice to Ms. West under the ADAAA.[34]

On April 23, 2018, Ms. West initiated this action.[35]   The Complaint alleges two federal causes of action: (1) retaliation and interference in violation of the FMLA (Count I); and (2) discrimination in violation of the ADAAA (Count II).  Ms. West also alleges the following causes of action under Alaska law: (1) discrimination based on disability in violation of AS 18.80.220(a)(1) (Count III); (2) disparate treatment because of disability in violation of AS 18.80.220 (Count IV); (3) breach of the duty to engage in the interactive process and provide reasonable accommodation of a disability in violation of AS 18.80.220 (Count V); (4) breach of the implied covenant of good faith and fair dealing (Count VI); and (5) the intentional infliction of emotional distress.[36]

---

[31] Docket 10-1 at 2.

[32] Docket 10 (Aff. of Laura Crisp) at 2–3, ¶¶ 5–6.

[33] Docket 10-2 (Dismissal and Notice of Rights) at 1.

[34] Docket 10-2 at 1.

[35] Docket 1.

[36] Docket 1 at 6–12, ¶¶ 36–78.  The Complaint styles the last of these as the "Sixth Cause of Action."  Docket 1 at 12.  However, it is the seventh cause of action listed in the Complaint.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 5 of 40

On June 21, 2018, Alaska Airlines filed the instant Motion to Dismiss.[37]

## LEGAL STANDARD

### I. Jurisdiction and Applicable Law

The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action with certain claims arising under federal law, 29 U.S.C. § 201, *et seq.* The Court has supplemental jurisdiction over Plaintiff's related state law claims.[38]

The Court applies federal procedural law; Alaska substantive law applies to the state law claims.[39] Whether federal law preempts a state law claim is a question of federal law.[40]

### II. Standard for Dismissal

A defendant may seek dismissal of an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). When such a motion is made, the plaintiff has the burden of proving jurisdiction.[41] If the defendant raises a factual challenge to the court's jurisdiction, as opposed to a facial challenge based solely on the allegations in the complaint, a court may consider matters outside the pleadings in ruling on the motion.[42] ""[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of

---

[37] Docket 14.

[38] *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

[39] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[40] *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213–14 (1985).

[41] *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

[42] *See Roberts v. Corrothers*, 812 F.2d 1173, 1177–78 (9th Cir. 1987); *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 6 of 40

disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'"[43] Here, Alaska Airlines submitted additional materials with its motion to dismiss.[44]

Alaska Airlines also seeks dismissal under Rule 12(b)(6) for failure to state a claim. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[45] *Iqbal* does not require a litigant to prove her case in her pleading, but it requires the litigant to "state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged].'"[46] The pleading must contain "enough facts to state a claim to relief that is plausible on its face."[47] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[48] When reviewing a Rule 12(b)(6) motion, a court considers only the pleadings and documents incorporated into the pleadings by reference, as well as matters on which a court may

---

[43] *Kingman Reef*, 541 F.3d at 1195 (quoting *Corrothers*, 812 F.2d at 1177).

[44] *See* Docket 9 (Aff. of Misty Villastrigo); Docket 9-1 (CBA); Docket 9-2 (System Regulations); Docket 9-3 (Notice of Discipline or Discharge); Docket 9-4 (First Step Grievance Decision); Docket 9-5 (Second Step Grievance Decision); Docket 10 (Aff. of Laura Crisp); Docket 10-1 (Notice of Charge of Discrimination); Docket 10-2 (Dismissal and Notice of Rights).

[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)

[46] *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alterations in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[47] *Twombly*, 550 U.S. at 570; *see also Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) ("Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory.").

[48] *Bain v. California Teachers Ass'n*, 891 F.3d 1206, 1211 (9th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 7 of 40

take judicial notice.[49]  A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."[50]  This inquiry requires a court to "draw on its judicial experience and common sense."[51]  When a motion to dismiss for failure to state a claim is granted, a court "should freely give leave when justice so requires."[52]  But leave to amend is properly denied as to those claims for which amendment would be futile.[53]

## DISCUSSION

Alaska Airlines advances four arguments in its motion to dismiss, which the Court considers in the following order: First, Alaska Airlines contends that the Court lacks subject matter jurisdiction over Ms. West's ADAAA claims because she failed to timely exhaust her administrative remedies through the EEOC.  Second, it contends that the RLA preempts or precludes jurisdiction over each of Ms. West's claims.  Third, it contends that Ms. West did not submit her claims to binding arbitration as required by the CBA.  Fourth, it contends in the alternative that Ms. West has not alleged sufficient facts to support her disparate treatment and intentional infliction of emotional distress claims.[54]

### 1.  Failure to Exhaust Administrative Remedies

Alaska Airlines contends that Ms. West's ADAAA claims should be dismissed

---

[49] *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

[50] *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citing *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).

[51] *Iqbal*, 556 U.S. at 679.

[52] Fed. R. Civ. P. 15(a)(2).

[53] *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (citing *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)).

[54] Docket 8 at 4–5.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 8 of 40

because she did not file a perfected charge of discrimination with the EEOC prior to filing suit.[55]  Ms. West responds that she filed a charge with the EEOC, then received a right to sue letter from the EEOC and timely filed suit thereafter.[56]  She does not assert that she filed a verified charge with the EEOC.[57]

"Plaintiffs bringing employment discrimination charges under the ADA must comply with the procedural requirements set forth in Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–5."[58]  One procedural requirement is that before filing suit, the claimant has filed a "charge" with the EEOC, which "shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires."[59]  EEOC regulations authorize plaintiffs to amend their charges "to cure technical defects or omissions, including failure to verify the charge[s]," and provide that such amendments "will relate back to the date the charge was first received."[60]

Several circuits have concluded that the verified charge requirement for EEOC claims is mandatory and cannot be excused.[61]  But other circuit courts have concluded

---

[55] Docket 8 at 40.

[56] Docket 14 at 27–31.

[57] The parties discuss whether Ms. West filed a "formal" or "perfected" charge.  *See* Docket 8 at 40; Docket 14 at 30–31.  A charge must be verified to be perfected.  *See U.S. E.E.O.C. v. Calumet Photographic, Inc.*, 687 F. Supp. 1249, 1252 (N.D. Ill. 1988).

[58] *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 42 U.S.C. § 12117(a)).

[59] 42 U.S.C. § 2000e-5.

[60] 29 C.F.R. § 1601.12(b).

[61] *See, e.g.*, *Buck*, 452 F.3d at 262; *Balazs v. Liebenthal*, 32 F.3d 151, 154 (4th Cir. 1994); *Hodges v. Northwest Airlines*, 990 F.2d 1030, 1032 (8th Cir.1993).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 9 of 40

that the requirement "is not a *jurisdictional* prerequisite for suit."[62]  In those circuits, the verified charge requirement may be "subject to waiver as well as tolling when equity so requires."[63]

Ms. West contends that "[w]hether [she] actually perfected the charge is harmless error and should not be grounds for dismissal of this charge."[64]  Ms. West cites *Wrighten v. Metro. Hosps., Inc.* for the proposition that "[g]enerally, the exhaustion requirement is satisfied when the plaintiff receives a right-to-sue notice from the EEOC."[65]  In *Wrighten*, the Ninth Circuit concluded that the subsequent issuance of a right-to-sue letter cured any jurisdictional defects.[66]  However, there is no indication that the *Wrighten* plaintiffs failed to file verified charges with the EEOC.[67]  Citing *EEOC v. Airguide Corp.*, Ms. West also argues that because Alaska Airlines "received notice and EEOC issued a right to sue letter to both parties," the lack of a verified charge did not result in any prejudice.[68]  But in *Airguide*, the Fifth Circuit noted that the EEOC made "every attempt to comply with the conditions precedent to suit."[69]  In contrast, Ms. West provides no explanation for her

---

[62] *Buck*, 452 F.3d at 262; *see Gad v. Kansas State Univ.*, 787 F.3d 1032, 1038 (10th Cir. 2015); *Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74 (5th Cir.1982); *cf. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (concluding that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court).

[63] *Buck*, 452 F.3d at 262 (quoting *Zipes*, 455 U.S. at 398).

[64] Docket 14 at 30.

[65] Docket 14 at 31.

[66] *Wrighten v. Metro. Hosps., Inc.*, 726 F.2d 1346, 1351 (9th Cir. 1984).

[67] *Cf. Soto v. Castlerock Farming & Transp., Inc.*, No. CIV-F-09-0701 AWI, 2013 WL 1222055, at *2 (E.D. Cal. Mar. 25, 2013) (declining to apply *Wrighten* approach where plaintiff had not filed timely notice with a California agency).

[68] Docket 14 at 31; *see* 539 F.2d 1038, 1042 (5th Cir. 1976).

[69] *Airguide*, 539 F.2d at 1042.  The EEOC was the plaintiff in the suit.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 10 of 40

failure to file a verified charge. Lastly, Ms. West contends that the purpose of a verified charge "is not to provide notice to the employer."[70] She cites no cases in support of this assertion, and other courts have concluded that verification does serve a notice purpose.[71]

In *Buck v. Hampton Township School District*, an employer who participated in EEOC proceedings despite not receiving a verified charge subsequently raised the employee's failure to verify as a bar to judicial proceedings.[72] The court concluded that where "an employer has actual notice of a discrimination charge and chooses to respond to the merits of the claim before the EEOC without asserting lack of verification as a defense it waives its right to secure dismissal of the federal court proceedings on that basis."[73] Here, however, Alaska Airlines did not respond to the merits of Ms. West's claim before the EEOC at any time prior to the initiation of the suit.[74]

Ms. West failed to exhaust her administrative remedies and has articulated no reason for failing to exhaust her administrative remedies that would justify waiving the verified claim to the EEOC requirement. Therefore, her ADAAA claims will be dismissed with prejudice.[75]

---

[70] Docket 14 at 30.

[71] *See Gad v. Kansas State Univ.*, 787 F.3d 1032, 1042 (10th Cir. 2015) ("Moreover, verification provides notice and an opportunity for the employer to investigate, promoting the prompt administration of discrimination complaints and possible settlement.").

[72] 452 F.3d at 264.

[73] 452 F.3d at 265.

[74] Alaska Airlines did not receive any communication from the EEOC apart from the Notice of Charge of Discrimination. Docket 10 at 3, ¶ 6.

[75] Accordingly, the Court does not address whether Ms. West's ADAAA claims are time-barred or precluded under the RLA.

Amendment of these claims would be futile because Ms. West's EEOC proceedings are

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 11 of 40

## 2. Preemption and Preclusion Under the Railway Labor Act

Alaska Airlines contends that Ms. West's federal law claims are precluded by the RLA, 45 U.S.C. §§ 151–65, 181–88. It further contends that her state law claims are preempted by the RLA.[76] While "[t]he preemption doctrine per se does not govern questions relating to the compatibility of two or more federal laws," courts have applied the same analysis in determining whether a federal claim is precluded and whether a state claim is preempted by the RLA.[77]

"Whether federal law pre-empts a state law establishing a cause of action is a question of congressional intent."[78] Congress passed the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor

---

completed. As such, the unverified charge cannot be retroactively amended. *See Butler v. Greif, Inc.*, 325 F. App'x 748, 749 (11th Cir. 2009); *Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994).

[76] *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 259 n.6 (1994) (differentiating "RLA preclusion of a cause of action arising out of a *federal* statute" from "RLA pre-emption of a cause of action arising out of *state* law" (emphasis in original)).

[77] *Saridakis v. United Airlines*, 166 F.3d 1272, 1276 (9th Cir. 1999); *see also, e.g.*, *Brown v. Illinois Cent. R.R. Co.*, 254 F.3d 654, 662–63 (7th Cir. 2001) ("[W]e find that the preemption standard should govern in a preclusion case unless the analysis of the two federal statutes clearly suggests otherwise."). Similarly, courts considering RLA preemption arguments rely on analysis from RLA preclusion cases. *See, e.g.*, *Hawaiian Airlines*, 512 U.S. at 259 n.6 ("*Buell*, of course, involved possible RLA preclusion of a cause of action arising out of a *federal* statute, while this case involves RLA pre-emption of a cause of action arising out of *state* law and existing entirely independent of the CBA. That distinction does not rob *Buell* of its force in this context."); *Leaea v. United Airlines, Inc.*, No. 18-CV-00749-SI, 2018 WL 3777566, at *8 (N.D. Cal. Aug. 9, 2018).

When determining whether the RLA preempts or precludes a claim, courts also look to cases analyzing the Labor Management Relations Act ("LMRA"). *See Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 913 n.1 (9th Cir. 2018) (en banc) ("Because the RLA and LMRA § 301 preemption standards are 'virtually identical' in purpose and function, they are, for the most part, analyzed under a single test and a single, cohesive body of case law." (citing *Hawaiian Airlines*, 512 U.S. at 260, 262–63 & n.9)).

[78] *Hawaiian Airlines*, 512 U.S. at 252 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985)).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 12 of 40

disputes.[79]  To that end, "the RLA establishes a mandatory arbitral mechanism for 'the prompt and orderly settlement' of two classes of disputes" — "major" and "minor" disputes.[80]  Major disputes involve "the formation of collective [bargaining] agreements or efforts to secure them."[81]  Minor disputes involve "the interpretation or application of agreements covering rates of pay, rules, or working conditions."[82]  The RLA requires that minor disputes be "addressed through the CBA's established grievance mechanism, and then, if necessary, arbitrated before the appropriate adjustment board."[83]  Accordingly, "[t]o the extent state law would . . . create a cause of action for a minor dispute, and thereby 'permit[] an individual to sidestep available grievance procedures,'" state law is preempted.[84]

After the parties submitted their briefing, the Ninth Circuit decided *Alaska Airlines, Inc. v. Schurke* en banc.[85]  In *Schurke*, the Ninth Circuit explained the two-part inquiry used to determine whether a claim is preempted or precluded by the RLA.[86]  First, the

---

[79] *Id.* at 252 (citing *Atchison, T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 562 (1987); 45 U.S.C. § 151a). The RLA was extended to cover the airline industry in 1936.  *See* 45 U.S.C. § 181.

[80] *Hawaiian Airlines*, 512 U.S. at 252 (quoting 45 U.S.C. § 151a); *see Schurke*, 898 F.3d at 916 n.5 ("The RLA does not itself use the terms 'major' or 'minor.'  However, the terms were widely used to describe these two categories of dispute before the statute was enacted, and remain in common use." (citing *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945))).

[81] *Hawaiian Airlines*, 512 U.S. at 252 (quoting *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 302 (1989)).

[82] *Schurke*, 898 F.3d at 917 (quoting 45 U.S.C. § 151a); *Conrail*, 499 U.S. at 302.

[83] *Id.* (citing 45 U.S.C. § 152; *id.* §§ 153, 184); *see also Conrail*, 499 U.S. at 302 ("[M]ajor disputes seek to create contractual rights, minor disputes to enforce them.").  Every airline industry CBA establishes a "system board of adjustment"; minor disputes arising in the airline industry are arbitrated before these bodies.  *See id.* at 917 n.6.

[84] *Schurke*, 898 F.3d at 919 (second alteration in original) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988)).

[85] 898 F.3d 904 (9th Cir. 2018) (en banc).

[86] *Id.* at 920 (discussing preemption of state law claim).  The Court indicated that the test also

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 13 of 40

Court must "evaluate the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself."[87]

> If a claim arises entirely from a right or duty of the CBA — for example, a claim for violation of the labor agreement, whether sounding in contract or in tort — it is, in effect, a CBA dispute in state law garb, and is preempted. In such cases, the CBA is the "only source" of the right the plaintiff seeks to vindicate. . . . By contrast, claims are not simply CBA disputes by another name, and so are not preempted under this first step, if they just refer to a CBA-defined right; rely in part on a CBA's terms of employment; run parallel to a CBA violation; or invite use of the CBA as a defense.[88]

Second, if the claim is not preempted by the first step, a court must ask "whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration."[89]

> "Interpretation" is construed narrowly; "it means something more than 'consider,' 'refer to,' or 'apply.'" Accordingly, at this second step of an RLA or LMRA § 301 preemption analysis, claims are only preempted to the extent there is an active dispute over "the meaning of contract terms." "[A] *hypothetical* connection between the claim and the terms of the CBA is not enough to preempt the claim . . . ." Nor is it enough that resolving the state law claim requires a court to refer to the CBA and apply its plain or undisputed language — for example, "to discern that none of its terms is reasonably in dispute"; to identify "bargained-for wage rates in computing [a] penalty"; or "to determine whether [the CBA] contains a clear and unmistakable waiver of state law rights."[90]

In sum, "for each of [Ms. West's] claims, [the Court] must determine whether the claim arises from the CBA[] and, if not, whether establishing the elements of the claim will

---

applies to preclusion cases. *See id.* at 920 n.10.

[87] *Id.* at 921 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)).

[88] *Id.* (footnotes and citations omitted) (alterations in original).

[89] *Id.* (citing *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994); *Livadas*, 512 U.S. at 124–25).

[90] *Id.* at 921–22 (footnotes and citations omitted) (alterations in original).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 14 of 40

require interpretation of the CBA[]."[91]

## A. FMLA Claims (Count I)

Ms. West contends that Alaska Airlines violated the Family Medical Leave Act ("FMLA").[92] "Courts have recognized two theories for recovery on FMLA claims under § 2615, the retaliation . . . theory and the . . . interference theory."[93] The parties agree that Ms. West's Complaint implicates both types of FMLA claims.[94] To establish a prima facie case of retaliation, Ms. West must show that (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the two actions.[95] To establish a prima facie case of interference, Ms. West must show that (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled.[96]

Alaska Airlines does not contend that Ms. West's claims "arise entirely from a right or duty of the CBA" — step one of the test described in *Schurke*.[97] It argues, however, that preclusion is warranted because Ms. West cannot establish each element of her

---

[91] *Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018).

[92] Docket 1 at 6–7, ¶¶ 36–42; *see* 29 U.S.C. § 2615 (prohibiting "interference with rights").

[93] *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011) (quoting *Smith v. Diffee Ford–Lincoln–Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002)).

[94] Docket 8 at 18; Docket 14 at 40.

[95] *Washington v. Fort James Operating Co.*, 110 F. Supp. 2d 1325, 1330 (D. Or. 2000) (citing *Morgan v. Hilti*, 108 F.3d 1319, 1325 (10th Cir.1997)).

[96] *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (citing *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)).

[97] *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (en banc).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 15 of 40

prima facie cases without "interpretation of the CBA."[98]

The few courts that have addressed whether the RLA precludes an FMLA retaliation claim concluded that it does not. In *Staunch v. Continental Airlines, Inc.*, the Northern District of Ohio concluded that an FMLA retaliation claim is "not a contractual right embedded in the [CBA]" and can be resolved "through a federal statute and without any reference to the [CBA]."[99] Similarly, in *South v. GoJet Airlines, LLC*, the Southern District of Iowa held that a plaintiff's FMLA retaliation claim "merely require[d] a reference to the CBA, not an interpretation of the CBA."[100]

Two United States Supreme Court decisions address claims similar to Ms. West's FMLA retaliation claim. In *Lingle v. Norge Division of Magic Chef*, a terminated employee alleged that her termination constituted retaliatory discharge under Illinois law.[101] Her employer replied that the claim was preempted pursuant to the LMRA. The Supreme Court rejected this argument. It first noted that to establish a prima facie case of retaliatory discharge under Illinois law, the plaintiff would have to show that (1) she was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge her was to deter her from exercising her statutory rights or to

---

[98] *Id.*; *see* Docket 8 at 18–24. Alaska Airlines also argues that this Court should apply the burden-shifting test articulated in *McDonnell Douglas Corp. v. Green* when analyzing Ms. West's FMLA retaliation claim, and that "preemption applies when the burden shifting framework for retaliation claims implicates terms of the CBA." *See* 411 U.S. 792, 802; Docket 8 at 23. However, the Ninth Circuit has held that the *McDonnell* burden-shifting framework does not apply to FMLA retaliation claims. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001).

[99] No. 106-CV-1011, 2007 WL 218729, at *5 (N.D. Ohio Jan. 26, 2007), *aff'd*, 511 F.3d 625 (6th Cir. 2008).

[100] No. 4:12-CV-00378-JEG, 2013 WL 6253582, at *5 (S.D. Iowa Sept. 30, 2013).

[101] 486 U.S. 399 (1988).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 16 of 40

interfere with her exercise of those rights.[102]  The Court held that both elements implicated "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer," neither of which would "require[] a court to interpret any term of a collective-bargaining agreement."[103]  Furthermore, any inquiry into a proffered nonretaliatory reason for the discharge would be "purely factual" and would "not turn on the meaning of any provision of a [CBA]."[104]  Accordingly, the Supreme Court concluded that the LMRA did not preempt the state law claim.[105]  Similarly, in *Hawaiian Airlines, Inc. v. Norris*, the Supreme Court rejected an employer's argument that a suit alleging retaliatory discharge because of whistleblower activities was preempted by the RLA.[106]  The employer argued that the plaintiff's claim would require a determination whether the termination was justified by the plaintiff's failure to sign a maintenance record as required by the CBA. Citing *Lingle*, the Supreme Court concluded that any such determination would "require only a purely factual inquiry into any retaliatory motive of the employer."[107]

Here, Alaska Airlines contends that because it argues Ms. West was terminated for attendance issues, "[t]he Court cannot properly evaluate Alaska Airlines' legitimate non-retaliatory reasons for the termination … without interpreting attendance requirements, employee leave rights and obligations, and progressive discipline, as well

---

[102] *Lingle*, 486 U.S. at 407 (citing *Horton v. Miller Chemical Co.*, 776 F.2d 1351, 1356 (7th Cir. 1985)).  The elements of this state law tort are similar to the elements of an FMLA retaliatory discharge claim.  *See supra* note 95 and accompanying text.

[103] *Id.*

[104] *Id.*

[105] *Id.* at 413.

[106] 512 U.S. 246, 266 (1994).

[107] *Id.*

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 17 of 40

as past practices and interpretation of the relevant policies."[108]  Like the defendant in *Hawaiian Airlines*, Alaska Airlines proffers a non-retaliatory motive for Ms. West's termination, and maintains that the evaluation of that motive will implicate the CBA.[109] However, there is no indication, at least at this stage of the proceeding, that an inquiry into Alaska Airlines' motive would "turn on the meaning of any provision" of the CBA.[110] Ms. West does not allege that Alaska Airlines misapplied the CBA, but that its decision to terminate her was retaliatory.  It appears that whether Alaska Airlines' proffered reason for terminating Ms. West differed from its actual reason for doing so is a "purely factual question" that would "not require a court to interpret any term of the [CBA]," and is therefore not precluded by the RLA.[111]

Whether Ms. West's interference claim is precluded presents a closer question.[112] Alaska Airlines contends that "[t]o establish her FMLA interference claim, Ms. West will have to prove—by reference to and interpretation of the CBA—that her early departure complied with Alaska Airlines' notification and procedural requirements for such absences.  Because Ms. West would have to show that she was entitled to leave under the FMLA and provided sufficient notice pursuant to the CBA of her intent to take leave,

---

[108] Docket 8 at 24.

[109] *See* 512 U.S. at 266.

[110] *Lingle*, 486 U.S. at 407.

[111] *Hawaiian Airlines*, 512 U.S. at 261.

[112] The Court has found few cases addressing whether the RLA precludes FMLA interference claims.  *See VanSlyck v. GoJet Airlines, LLC*, 323 F.R.D. 266, 270 (N.D. Ill. 2018) (interference claim precluded); *Staunch v. Cont'l Airlines, Inc.*, No. 106-CV-1011, 2007 WL 218729, at *1, *5 (N.D. Ohio Jan. 26, 2007), *aff'd*, 511 F.3d 625 (6th Cir. 2008) (interference claim not precluded). In *VanSlyck* the question was addressed at the summary judgment stage; in *Staunch*, it was addressed at the motion to dismiss stage.  *See VanSlyck*, 323 F.R.D. at 277; *Staunch*, 2007 WL 218729 at *4–5.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 18 of 40

it seems likely that the Court would need to consult provisions of the CBA in order to evaluate Ms. West's claim. Critically, however, Alaska Airlines has not identified an "active dispute over 'the meaning of contract terms.'"[113] To conclude that a claim is precluded under the RLA, a court must do more than identify provisions of a CBA that may be relevant to litigation of the claim. Here, at the motion to dismiss stage, it is not apparent that analysis of Ms. West's interference claim will necessarily require interpretation of any CBA terms.[114] The Court does not "discount the possibility that in the course of resolving [this] claim, an interpretive dispute might arise."[115] At present, however, "any interpretation of the CBA's provisions . . . is only potential and limited."[116] Accordingly, Alaska Airlines' motion to dismiss Ms. West's FMLA interference claim as precluded by the RLA will be denied.[117]

## B  State Law Claims

### i.  Disability Discrimination — Termination (Count III)

Ms. West contends that her employment was terminated because of her disability in violation of AS 18.80.220(a)(1).[118] To establish a prima facie case of disability

---

[113] *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (en banc) (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)).

[114] *See Schurke*, 898 F.3d at 921 ("[A] hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim" (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001), *as amended* (Aug. 27, 2001))).

[115] *Humble v. Boeing Co.*, 305 F.3d 1004, 1011 (9th Cir. 2002).

[116] *Id.*

[117] In its reply, Alaska Airlines argues that Ms. West's medical condition "did not qualify for coverage under FMLA until after her attendance discipline in May." Docket 18 at 8 n.1. This contention implicates analysis of regulations defining the term "serious health condition" and factual questions regarding how often Ms. West required treatment, rather than interpretation of the CBA. *See* 29 C.F.R. §§ 825.113(a), .115(c)(1).

[118] Docket 1 at 10, ¶¶ 58–64. In relevant part, AS 18.80.220 provides:

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 19 of 40

discrimination under the statute, a plaintiff must show that (1) she is a disabled person; (2) she is a qualified individual, meaning she can perform the essential functions of her job with or without a reasonable accommodation; and (3) she has suffered an adverse employment decision because of her disability.[119] Alaska Airlines argues that the claim is preempted because under the second step of the *Schurke* analysis, the Court would need to interpret the CBA to determine whether Ms. West is a "qualified individual" and whether she was terminated "because of" her disability.[120]

The Ninth Circuit addressed a similar argument in *Saridakis v. United Airlines*.[121] In *Saridakis*, United Airlines terminated the plaintiff's employment for failing a drug test.[122] Saridakis filed suit alleging that the airline had committed disability discrimination in violation of the ADA. The airline contended that the ADA claim was preempted by the RLA because "its defense to Saridakis's charge of disability discrimination is based on a contractual right to terminate him," and because the claim "involve[s] the question whether Saridakis was fired pursuant to the CBA's provisions."[123] In rejecting these arguments, the Circuit Court first held that whether the plaintiff's termination was justified under the CBA said "nothing about the threshold question whether the dispute was subject to the

---

> [I]t is unlawful for . . . an employer to refuse employment to a person, or to bar a person from employment, or to discriminate against a person in compensation or in a term, condition, or privilege of employment because of the person's . . . physical or mental disability . . . when the reasonable demands of the position do not require distinction on the basis of . . . physical or mental disability.

[119] *See Smith v. Anchorage Sch. Dist.*, 240 P.3d 834, 843 (Alaska 2010) (quoting *Moody-Herrera v. State, Dep't of Nat. Res.*, 967 P.2d 79, 88 (Alaska 1998)).

[120] Docket 8 at 27–29; *see Schurke*, 898 F.3d at 921.

[121] *Saridakis v. United Airlines*, 166 F.3d 1272, 1274 (9th Cir. 1999).

[122] *Id.* at 1275.

[123] *Id.* at 1277.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 20 of 40

RLA in the first place."[124]  It further held that even if Saridakis's ADA claim would "require

the court to review the facts underlying Saridakis's termination," such review would "not

appear to be the sort of interpretation" that was precluded by the RLA.[125]  The Circuit

Court explained:

> [T]he ADA . . . claim[] will require a court to examine whether United
> terminated Saridakis because of his disability. Although United may be able
> to introduce and rely upon the CBA and the last chance agreement as a
> part of its defense, under the Supreme Court's recent ruling [in *Hawaiian
> Airlines*] that would not be enough to render the dispute minor and therefore
> subject to the RLA's dispute resolution mechanism.[126]

Similarly, in *Carmona v. Southwest Airlines Co.*, Southwest terminated Carmona's

employment for excessive absenteeism.[127]   Carmona filed suit alleging disability

discrimination under the ADA.  Southwest argued that Carmona's claims would require

the court to interpret "the CBA's attendance policy, procedures for obtaining medical and

sick leave, and discipline and termination procedures."[128]   However, the Fifth Circuit

concluded that "provisions of the CBA are relevant to, but *not* dispositive of, the resolution

of Carmona's claims," and thus the claims were not precluded by the RLA.[129]

> Even though a court would have to *refer to* the CBA to consider fully each
> of the alleged acts of disparate treatment, there is no disagreement about
> how to interpret these provisions of the CBA that detail Southwest's
> procedures for assessing attendance, leave, discipline, and termination.
> Carmona's factual allegations that unexcused absences by female flight
> attendants went unpunished, that remarks of his supervisors regarding
> male employees were discriminatory, and that his chronic illnesses were

---

[124] *Id.* (quoting *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 266 (1994)).

[125] *Id.* (quoting *Hawaiian Airlines*, 512 U.S. at 261–62).

[126] *Saridakis*, 166 F.3d at 1277.

[127] 536 F.3d 344, 346 (5th Cir. 2008).

[128] *Id.* at 348.

[129] *Id.* at 349 (emphasis in original).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 21 of 40

the real reason he was fired, do not bring the meaning of any CBA provisions into dispute. He alleges that CBA procedures were *applied* in a discriminatory manner, not that CBA procedures were fundamentally discriminatory.[130]

The District Court for the Northern District of California recently cited *Carmona* approvingly in *Leaea v. United Airlines, Inc.*[131] Leaea alleged that United terminated his employment because of his disability in violation of California law. The airline argued that the claims were preempted by the RLA because they would require interpretation of the Attendance Policy of the CBA. The *Leaea* court concluded the claims were not preempted, because although the airline had "cited portions of the CBA that may be relevant to plaintiff's claims," it had not "identified an 'active dispute over the meaning of contract terms.'"[132] The district court added, "[t]o the extent the parties dispute whether United properly assessed points for the plaintiff's absences under the Absence Policy, the Court will be required to refer to that policy and make a factual determination; that evaluation does not require interpretation over disputed terms of the CBA."[133]

Like the claims examined in these cases, Alaska Airlines has not shown that Ms. West's disability discrimination claim under AS 18.80.220(a)(1) requires interpretation of the CBA. The airline argues that to determine whether Ms. West was terminated "because of" her disability, the Court will necessarily have to "evaluat[e] Alaska Airlines' interpretation of attendance and leave policies."[134] However, as in *Leaea*, the airline has

---

[130] *Id.* (emphasis in original).

[131] *Leaea v. United Airlines, Inc.*, No. 18-CV-00749-SI, 2018 WL 3777566 (N.D. Cal. Aug. 9, 2018).

[132] *Id.* at *8 (quoting *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018) (en banc)).

[133] *Id.*

[134] Docket 8 at 29.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 22 of 40

not identified any "active dispute over the meaning of contract terms" that relate to this inquiry.[135]  Moreover, as in *Saridakis*, it is not apparent that an examination of Alaska Airlines' "conduct and motives" in terminating Ms. West will require interpretation of the CBA.[136]  As part of her state law claim, Ms. West contends that if certain of her leave had been counted as FMLA leave, "it would have dropped off her attendance record and she would not have been terminated."[137]  If this is disputed, the Court will likely need to refer to the CBA and/or to Alaska Airlines' attendance and leave policies.  But this evaluation would likely require the application of these terms, rather than the interpretation of disputed terms.[138]

Alaska Airlines has also not shown that the Court would have to interpret the CBA to determine whether Ms. West is a "qualified individual."  The airline notes that Article 4 of the CBA "lays out the classification job description for customer service agents" such as Ms. West.[139]  Again, however, Alaska Airlines has not identified a dispute as to the meaning of any CBA terms related to an element of Ms. West's state disability claim. Article 4 outlines job duties associated with the customer service agent position in

---

[135] *Leaea v. United Airlines, Inc.*, No. 18-CV-00749-SI, 2018 WL 3777566 (N.D. Cal. Aug. 9, 2018) at *8 (quoting *Schurke*, 898 F.3d at 921).

[136] *Saridakis v. United Airlines*, 166 F.3d 1272, 1277 (9th Cir. 1999).

[137] Docket 1 at ¶ 63.

[138] Ms. West also states that her supervisors "counseled her on taking too much sick leave despite her having plenty of unused sick and annual leave." Docket 1 at ¶ 61.  Alaska Airlines argues that the Court would need to analyze the CBA and various policies to determine whether Alaska Airlines could terminate Ms. West even if she had available vacation and sick leave.  Docket 18 at 9–10.  At oral argument, however, Ms. West claimed that Alaska Airlines' decision to counsel her on "taking too much sick leave" is probative of animus; she did not claim that this counselling violated the CBA or related policies.  Docket 28 (Transcript) at 17.

[139] Docket 8 at 28; *see* Docket 9-1 at 13–14.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 23 of 40

straightforward terms; the Court would likely refer to this portion of the CBA when analyzing Ms. West's claims, but it does not appear that the interpretation of any disputed terms would be necessary.

Alaska Airlines further contends that to determine whether Ms. West is a "qualified individual," the Court will have to "analyze . . . what is allowed and disallowed by Alaska Airlines' attendance and leave policies."[140] One of these policies addresses "attendance reliability."[141] The parties dispute the significance of this attendance reliability policy; Ms. West characterizes it as "subjective" and "irrelevant in this lawsuit," while Alaska Airlines responds that "the flexible nature of the policy underscores the importance of preemption in this case."[142] But there is at present no active disagreement between the parties that requires interpretation of the policy's language — such as a dispute over the meaning of specific terms, or over the specific requirements the policy imposes on employees.[143] In the absence of such disagreement, the Court finds that dismissal of Ms. West's state law disability discrimination claim based on preemption is not warranted.

### ii. Disability Discrimination — Disparate Treatment (Count IV)

Ms. West also alleges that she was treated in a disparate manner because of her

---

[140] Docket 8 at 28.

[141] Docket 9-2 at 15–18. Alaska Airlines' attendance reliability policy is incorporated into the CBA. Docket 9-1 at 3–4; *see Baker v. Kaiser Aluminum & Chem. Corp.*, 951 F. Supp. 953, 960 (E.D. Wash. 1996) (rejecting argument that preemption analysis is "restricted . . . to only the CBA document").

[142] Docket 14 at 16; Docket 18 at 10.

[143] The attendance reliability policy states in part that "[a]ll employees are expected to strive for the goal of perfect attendance." Docket 9-2 at 15. Alaska Airlines has not asserted that this language imposes a perfect attendance requirement; the Court would find such a reading tenuous. *Cf. Bhd. of Locomotive Engineers & Trainmen v. Long Island R. Co.*, 340 F. App'x 727, 730 (2d Cir. 2009) (rejecting a party's "attempt to create ambiguity when in fact none exists").

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 24 of 40

disability in violation of AS 18.80.220.[144] Ms. West appears to allege that she was treated less favorably than a similarly situated employee prior to her termination.[145] To establish a prima facie case of disparate treatment under Alaska law, Ms. West must show that (1) she is a disabled person; (2) she was qualified for her position; (3) she suffered an adverse employment decision despite her qualifications, and (4) Alaska Airlines treated her less favorably than other qualified persons.[146]

Alaska Airlines contends that to analyze this claim, the Court would have to "interpret Alaska Airlines' attendance and leave policies."[147] However, it is impossible to determine from Ms. West's Complaint whether Alaska Airlines is correct. In support of this disability discrimination claim, the Complaint asserts only that "[Ms. West] has been treated in a disparate manner on the basis of her disability" and that "[o]ther employees who do not have a disability are treated more favorably."[148] The Complaint does not identify the other employees or explain how Ms. West was treated differently. As currently pled, Ms. West's disparate treatment claim does not implicate an active dispute over the interpretation of the CBA, and thus is not preempted by the RLA. However, as discussed below, Count IV fails to state a claim upon which relief can be granted.[149]

---

[144] Docket 1 at 10–11, ¶¶ 65–67.

[145] *See* Docket 14 at 39.

[146] *See Miller v. Safeway, Inc.*, 102 P.3d 282, 291 (Alaska 2004).

[147] Docket 8 at 30.

[148] Docket 1 at 10–11, ¶¶ 66–67. Ms. West also incorporates the Complaint's previous paragraphs into the section discussing this claim. Docket 1 at 10, ¶65. However, it is not apparent what other allegations in the Complaint support Ms. West's disparate treatment claim.

[149] *See infra* notes 213–18 and accompanying text.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 25 of 40

*iii. Reasonable Accommodation and Interactive Process (Count V)*

Ms. West next contends that Alaska Airlines breached its duty to engage in the interactive process and to reasonably accommodate her disability in violation of AS 18.80.220.[150] As with Ms. West's other claims, Alaska Airlines does not assert that these claims arise entirely from the CBA.[151] It argues, however, that the interpretation of the CBA and its policies will be required to determine whether the airline breached its duty to provide a "reasonable accommodation" or whether allowing leave would have imposed an "undue hardship."[152]

The Ninth Circuit addressed a similar situation in *Humble v. Boeing Co.*[153] Humble suffered an on-the-job injury and filed a state law reasonable accommodation claim.[154] Boeing maintained that the claim was preempted under the LMRA[155] because "the CBA, which provides an intricate scheme of seniority, must necessarily be interpreted to determine for which jobs Humble would have been eligible if her accommodation took the form of a transfer to a light duty position."[156] The Circuit Court rejected this argument on two grounds. First, the court held that it was not apparent that the plaintiff's claim necessarily implicated the CBA's complex seniority provisions. "A mere possible reliance on a CBA provision does not suffice to trigger preemption; at the very least, the fact that

---

[150] Docket 1 at 11, ¶¶ 68–71.

[151] *See Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 926 (9th Cir. 2018) (en banc).

[152] Docket 8 at 30–32.

[153] 305 F.3d 1004 (9th Cir. 2002).

[154] *Id.* at 1009.

[155] *See supra* note 77.

[156] *Humble*, 305 F.3d at 1010.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 26 of 40

a need to interpret the CBA is only hypothetical seriously undercuts a defendant's argument that the state law claim 'substantially depends' on the terms of the CBA."[157] Second, the court held that "the mere need to refer to a CBA to determine the jobs for which a disabled employee might be eligible may not be sufficient to trigger § 301 preemption, even if such consultation is certain to occur."[158] In reaching this conclusion, the *Humble* court relied in part on *Jimeno v. Mobil Oil Corp.*, an earlier Ninth Circuit case that also addressed LMRA preemption of a state law reasonable accommodation claim. To resolve that claim, "the *Jimeno* panel recognized that it would be necessary to consider factors such as facility size, number of employees, composition of the workforce, and facility budgets, many of which might involve consultation of the CBA."[159] Nevertheless, the *Jimeno* court concluded that "looking to the CBA to make these determinations rendered the CBA only 'peripherally relevant' to the claim, and so did not mandate preemption."[160] The *Humble* court characterized the *Jimeno* analysis as "closely on point," and held that Humble's reasonable accommodation claim did not "'substantially depend' upon application and interpretation" of the CBA.[161]

As in *Humble* and *Jimeno*, the resolution of Ms. West's reasonable

---

[157] *Id.* (footnote omitted).

[158] *Id.* 1010 (citing *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1519 (9th Cir. 1995)).

[159] *Humble*, 305 F.3d at 1010–11 (citing *Jimeno*, 66 F.3d at 1527).

[160] *Id.* at 1011 (citing *Jimeno*, 66 F.3d at 1527).

[161] *Id.*; *see also Leaea*, No. 18-CV-00749-SI, 2018 WL 3777566, at *8 (footnote omitted) ("Similarly, although the Court may be required to refer to the RAP Policy in connection with evaluating plaintiff's reasonable accommodation and interactive process claims, defendant has not shown that the Court would be required to interpret any disputed terms in order to adjudicate those claims. . . . There is no need to interpret the CBA to determine whether the parties failed to communicate and explore in good faith possible accommodations for the plaintiff.").

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 27 of 40

accommodation and interactive process claims do not necessarily require interpretation of the CBA. Alaska Airlines contends that Ms. West's reasonable accommodation claim will "require the Court or jury to analyze the CBA provisions on holiday leave, sick leave, personal leaves of absence, and medical leaves of absence, as well as policies and practices for use of paid and unpaid leave."[162] However, it is not clear to the Court that this claim would necessarily implicate all of these policies and provisions. Even if it did, Alaska Airlines has not shown that these policies and provisions would be more than "peripherally relevant" to the reasonable accommodation analysis.[163] Alaska Airlines also argues that "[t]o the extent [Ms. West's] leave would require other employees to be assigned extra shifts, the provisions regarding assignment of overtime and rest periods would also be implicated."[164] However, it has not shown that any reasonable accommodation would *necessarily* implicate these provisions.[165] Lastly, Alaska Airlines contends that its "program and policy on temporary modified duties would also require evaluation to analyze Plaintiff's accommodation claim.[166] But Alaska Airlines has not shown that there is currently a dispute over the meaning of any terms in this policy. Accordingly, Alaska Airlines' motion to dismiss Ms. West's state law reasonable accommodation and interactive process claims as preempted by the RLA will be denied.

---

[162] Docket 8 at 31; *see* Docket 9-1 at 33–45, Docket 9-2 at 9–14.

[163] *Humble*, 305 F.3d at 1011 (citing *Jimeno*, 66 F.3d at 1527).

[164] Docket 8 at 31; *see* Docket 9-1 at 23–24, 26–32.

[165] *See Schurke*, 898 F.3d at 921 ("[A] hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim.") (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001), *as amended* (Aug. 27, 2001))); *Humble*, 305 F.3d at 1010 ("A mere possible reliance on a CBA provision does not suffice to trigger preemption.").

[166] Docket 8 at 31; *see also* Docket 9-2 at 20–25.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 28 of 40

*iv. Breach of Implied Covenant of Good Faith and Fair Dealing (Count VI)*

Ms. West contends that her employment with Alaska Airlines "includes the implied covenant of good faith and fair dealing which is embodied in every employment relationship entered into in Alaska and imposes a duty on Defendant to treat its employees in a fair, equitable, nonbiased, and nondiscriminatory manner."[167] She further contends that Alaska Airlines breached this covenant.[168] Alaska Airlines responds that this is a "contractual claim" that "cannot be considered without interpretation of the [CBA]."[169]

In *Eldridge v. Felec Services, Inc.*, the Ninth Circuit considered whether a cause of action under Alaska law for breach of the implied covenant of good faith and fair dealing was preempted by the LMRA.[170] Eldridge asserted that she had been dismissed in retaliation for pursuing her rights under the Alaska Worker's Compensation Act ("AWCA").[171] The Circuit Court acknowledged that "Alaska courts characterize a retaliatory dismissal in violation of the implied covenant of good faith as a contract cause of action."[172] But the court concluded that the plaintiff's claim "would exist even in the absence of a collective bargaining agreement" and that the elements of the plaintiff's claim would not require the court to interpret any term of a CBA.[173] Accordingly, it held

---

[167] Docket 1 at 11, ¶ 73.

[168] Docket 1 at 12, ¶¶ 74–75.

[169] Docket 8 at 33.

[170] *Eldridge v. Felec Servs., Inc.*, 920 F.2d 1434, 1436 (9th Cir. 1990).

[171] *Id.* at 1437; *see* AS 23.30.001 *et seq*.

[172] *Eldridge*, 920 F.2d at 1437 (citing *Reed v. Municipality of Anchorage*, 782 P.2d 1155, 1158 (Alaska 1989)).

[173] *Id.* at 1438.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 29 of 40

that the LMRA did not preempt the claim.[174]

Ms. West's Complaint appears to assert that Alaska Airlines breached the implied covenant by failing to adhere to the terms of the CBA.[175] Such a claim would be preempted by the RLA. But at oral argument, Ms. West clarified that she is arguing that "because there was a breach in the law . . . [Alaska Airlines] breache[d] [the] implied covenant of good faith."[176] Ms. West's claim is not perfectly analogous to the claim at issue in *Eldridge*; it does not arise under the AWCA. However, a claim based on an alleged violation of AS 18.80.220—like that examined in *Eldridge*—does not "arise entirely" from the CBA.[177] Alaska Airlines contends that the claim would "require interpretation of Alaska Airlines' CBA and incorporated policies."[178] However, a state law breach of covenant claim based on the alleged statutory violations discussed above would implicate the same analysis as those statutory claims. Accordingly, the Court will deny Alaska Airline's motion to dismiss this claim as preempted by the RLA insofar as Ms. West alleges that Alaska Airlines breached the implied covenant of good faith and fair dealing by committing violations of AS 18.80.220. However, the Court will grant the motion to dismiss insofar as Ms. West alleges that Alaska Airlines breached the implied

---

[174] *Id.* Alaska Airlines argues that *Eldridge* is distinguishable because "the employee's conduct which allegedly motivated his discharge . . . was entirely separate and not intertwined with the conduct for which he was terminated." Docket 18 at 16. However, the *Eldridge* court's reasoning does not appear to be contingent upon this lack of intertwinement.

[175] *See* Docket 1 at 12, ¶ 75.

[176] Docket 28 at 15.

[177] *See Eldridge*, 920 F.2d at 1439 ("Under Alaska law, a breach of the implied covenant of good faith occurs if the employer discharged the employee in retaliation for conduct protected by public policy." (citing *Reed*, 782 P.2d at 1158)).

[178] Docket 18 at 15.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 30 of 40

covenant by violating the CBA itself.[179]

     *v. Intentional Infliction of Emotional Distress*[180]

Lastly, Ms. West alleges that her termination in violation of federal and state law constituted intentional infliction of emotional distress under Alaska law.[181]  Alaska Airlines contends that this claim is "grounded in the CBA and preempted under the RLA."[182]

In *Humble v. Boeing Co.*, Humble alleged that Boeing "engaged in extreme and outrageous conduct under Washington law by repeatedly placing her back in a job which she could not medically perform."[183]  The Ninth Circuit established general principles to determine when an intentional infliction of emotional distress claim will be preempted.[184]  First, a claim is preempted if "the CBA *specifically* covers the conduct at issue."[185]  Conversely, "if the CBA does not 'cover' the allegedly extreme and outrageous conduct, the intentional infliction claim will not be preempted."[186]  Lastly, "even if the CBA does purport to cover the conduct at issue, the outrage claim still may not be preempted if it

---

[179] *See Schurke*, 898 F.3d at 921 ("If a claim arises entirely from a right or duty of the CBA — for example, a claim for violation of the labor agreement, whether sounding in contract or in tort, . . . it is, in effect, a CBA dispute in state law garb, and is preempted." (citation omitted)).

[180] *See supra* note 36.

[181] Docket 1 at 12, ¶¶ 77–78; *see* Docket 14 at 47–48.

[182] Docket 8 at 34.

[183] 305 F.3d at 1014.  The *Humble* court considered whether a plaintiff's claim was preempted under the LMRA.  *See supra* note 77.

[184] *Id.* at 1013–14.

[185] *Id.* at 1013.

[186] *Id.*; *see also id.* at 1013 n.49 ("The difficulty, of course, and the source of some inconsistency in our case law, is how to determine whether the CBA 'covers' the conduct at issue. . . . The inconsistency often appears to be explainable by whether allegations of overtly abusive and/or harassing conduct are at issue: vague terms vesting discretion in management typically will not be read as authorizing or 'covering' abusive conduct, to which the parties would not, and possibly could not (without violating public policy) expressly agree.").

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 31 of 40

has been tacked on to the violation of a separate specific non-negotiable state statute, the violation of which *always* rises to the level of outrageousness."[187]

Applying these principles, the *Humble* court concluded that the LMRA preempted a state law outrage claim. The court first noted that a CBA provision "fairly directly addresse[d]" the purportedly outrageous conduct upon which the claim was premised.[188] It then held that the claim could not be "tacked on" to reasonable accommodation claims established by a state statute, as it had "found no authority in Washington law for the proposition that a violation of that state's reasonable accommodation provisions *always* rises to the level of extreme and outrageous conduct" and saw "no reason to define failure to reasonably accommodate as inherently outrageous, particularly in the absence of briefing on this point."[189]

It is difficult to reconcile the preemption analysis set out in *Humble* with the two-part test articulated in *Schurke*. *Schurke* suggests that a claim is preempted if it "arise[s] entirely from the CBA" or "require[s] construction of the CBA."[190] In contrast, *Humble* suggests that the claim is preempted if the CBA "covers" the conduct at issue, unless the

---

[187] *Id.* at 1013–14 (emphasis in original).

[188] *Id.* at 1014. The CBA provision stated: "[W]here an employee returns from a leave of absence . . . and he is medically not able to perform the job which he last held, he will be considered for any job that he is qualified and able to perform, or (if a surplus occurred that would have affected him during such leave) be subjected to surplusing procedures, all in accordance with Article 22." *Id.* at 1009 (emphasis omitted).

[189] *Id.* (emphasis in original); *see also Farmer v. United Broth. of Carpenters and Joiners of America, Local 25, et al.*, 430 U.S. 290, 305 (1977) ("[D]iscrimination in employment opportunities cannot itself form the underlying 'outrageous' conduct on which the state-court tort action is based. To hold otherwise would undermine the pre-emption principle.").

[190] 898 F.3d 904, 926–27 (9th Cir. 2018) (en banc).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 32 of 40

claim is "tacked on" to a *per se* outrageous violation of a state statute.[191]  If the Court

applied the *Schurke* test, its analysis of this claim would mirror the analysis of the implied

covenant of good faith and fair dealing claim; as pled, Ms. West's IIED claim is premised

on statutory violations that do not require construction of the CBA.  However, *Schurke* did

not address the analytical framework set out in *Humble*.  Furthermore, it did not purport

to overrule any past preemption cases.  Accordingly, the Court concludes that Ms. West's

IIED claim should be analyzed pursuant to the principles described in *Humble*.

Those principles indicate that Ms. West's IIED claim is preempted.  First, while the

claim is based on violations of state and federal law, Ms. West asserts that it is her

termination that constituted the "extreme and outrageous conduct."[192]  As in *Humble*, the

CBA covers—or at least "purport[s] to cover"—the employer's conduct; it incorporates

policies and provisions that "fairly directly address[]" employee termination.[193]  While

*Humble* does not precisely suggest how a court should determine whether the CBA

"covers" conduct, Ms. West's case does not seem to allege "overtly abusive and/or

harassing conduct" that would justify a narrow interpretation of the CBA's scope.[194]  As

in *Humble*, Ms. West's claim is "tacked on" to violation of a state statute.[195]  However, the

Court has found "no authority in [Alaska] law for the proposition that a violation of that

state's reasonable accommodation provisions *always* rises to the level of extreme and

---

[191] *Humble*, 305 F.3d at 1013–14; *see supra* note 186.

[192] Docket 1 at 12, ¶ 78; *see* Docket 14 at 47.

[193] *Humble*, 305 F.3d at 1014; *see* Docket 9-1 at 5, Docket 9-2 at 16–18.

[194] 305 F.3d at 1013 n.49; *see Farmer*, 430 U.S. at 305.

[195] *Humble*, 305 F.3d at 1014 (emphasis in original).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 33 of 40

outrageous conduct."[196] Furthermore, because Ms. West's claim is based on violations of *civil* statutes, it is distinguishable from other cases in which the Ninth Circuit found that the violation of a state criminal statute would be *per se* outrageous.[197] Therefore, Alaska Airlines' motion to dismiss Ms. West's IIED claim will be granted.

To summarize, Alaska Airlines' motion to dismiss Ms. West's FMLA retaliation and interference claim (Count I) as precluded by the RLA will be denied. The airline's motion to dismiss Ms. West's claims of discrimination in violation of AS 18.80.220(a)(1) (Count III) and breach of the duty to engage in the interactive process and reasonably accommodate her disability in violation of AS 18.80.220 (Count V) as preempted by the RLA will be denied. While the Court declines to conclude that Ms. West's claim of disparate treatment in violation of AS 18.80.220 (Count IV) is preempted by the RLA, the claim will be dismissed for failure to state a claim upon which relief can be granted.[198] Alaska Airlines' motion to dismiss Ms. West's breach of the implied covenant of good faith and fair dealing claim (Count VI) will be denied insofar as Ms. West alleges that Alaska Airlines breached the covenant by violating the FMLA or AS 18.80.220; it will be granted insofar as Ms. West alleges that Alaska Airlines breached the covenant by violating the

---

[196] *Id.* at 1014. Ms. West acknowledges this limitation but provides no evidence that the violations she alleges are *per se* outrageous. Docket 14 at 47–48.

[197] *See Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 697 (9th Cir. 2001), *as amended* (Aug. 27, 2001) (violation of California penal law was *per se* outrageous); *Miller v. AT & T Network Sys.*, 850 F.2d 543, 550 n.5 (9th Cir. 1988), *opinion amended on denial of reh'g*, (Aug. 24, 1988) ("[I]f a plaintiff alleges that an employer's criminal behavior inflicted extreme emotional distress, the emotional distress claim need not be preempted. The behavior could be found sufficiently outrageous to permit recovery without regard to whether the behavior might be permitted under the CBA. Its outrageousness would be clear from the state's decision to make the behavior criminal.").

[198] *See infra* notes 213–18.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 34 of 40

CBA itself.  Based on *Humble*, the Court finds the RLA preempts Ms. West's IIED claim (Count VII).[199]

### 3.  Failure to Arbitrate

Alaska Airlines next argues that Ms. West's claims "are subject to the mandatory arbitration procedures of the CBA."  It contends that while Ms. West's claims may be "couch[ed] . . . as violations of FMLA, discrimination, or retaliation, . . . . the root of all of her claims is whether her termination was appropriate under the CBA's attendance policy."  Accordingly, the airline maintains that "[n]one of these claims can be resolved without interpretation and application of the attendance policy, and the CBA firmly requires such disputes to be resolved by arbitration."[200]

In *Wright v. Universal Market Service Corp.*, the United States Supreme Court held that union-negotiated CBAs may require arbitration of statutory claims.[201]  *Wright* also established, however, that the waiver of a judicial forum for such claims must be "clear and unmistakable."[202]  Courts "will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is explicitly

---

[199] Alaska Airlines argues that the fact that Ms. West seeks wages, benefits, and other compensation also weighs in favor of preemption and preclusion of all her claims.  Docket 8 at 34.  While the Seventh Circuit took this factor into consideration in *Monroe v. Missouri Pacific Railroad Co.*, it also noted that "this reason alone would not compel a finding that [the plaintiff's] claims involve application or interpretation of a CBA."  115 F.3d 514, 518 n.4 (7th Cir. 1997) (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124–26 (1994) ("[T]he mere need to 'look to' the collective-bargaining agreement for damage computation is no reason to hold the state law claim defeated...."); *Lingle*, 486 U.S. at 413 n. 12)).  Ms. West's claims are not precluded or preempted simply because the calculation of damages may require reference to the CBA.

[200] Docket 8 at 38.

[201] 525 U.S. 70, 80 (1998) (declining to require arbitration of ADA claims).

[202] *Id.* at 80 (citation omitted).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 35 of 40

stated."[203]  An arbitration provision is clear and unmistakable if, for instance, it specifically names the statutory right subject to mandatory arbitration.[204]

Alaska Airlines does not address the "clear and unmistakable" standard articulated in *Wright*.  It contends that Ms. West was required to arbitrate her claims because the CBA requires that grievances related to attendance and termination be subject to arbitration before the System Board of Adjustment and because the CBA "specifically incorporates Alaska Airlines' FMLA, anti-discrimination, and anti-retaliation policies."[205] The CBA provides that the System Board "shall have jurisdiction over disputes between any employee or employees covered by this Agreement and the Company growing out of grievances," which include both "discipline grievances involving unsatisfactory attendance" and "suspension and discharge grievances."[206]   However, this general contractual provision does not expressly state that the parties will arbitrate specific statutorily protected rights.[207]   Furthermore, Alaska Airlines' policies do not expressly cite to AS 18.80.220.[208]   The airline has issued a "Guide to Family and Medical Leave Rights of COPs" that cites to the FMLA in detail.[209]   However, the CBA provides that Alaska

---

[203] *Id.*

[204] *See, e.g., 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 252 (2009) (naming "Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, [and] the New York City Human Rights Code.").

[205] Docket 8 at 38.

[206] Docket 9-1 at 48–49, 50–51, 53.

[207] *See Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1019 (D. Minn. 2015) (holding that CBA compelled arbitration of FMLA claims where CBA contained a general arbitration provision and "an explicit statutory reference to the FMLA").

[208] Alaska Airlines' System Regulations references the ADA on one page.  *See* Docket 9-2 at 23.

[209] Docket 9-2 at 26–42.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 36 of 40

Airlines may "modify [incorporated] manuals, policies and System Regulations during the term of the Agreement."[210] The CBA's reference to these documents does not demonstrate a "clear and unmistakable" intent to waive a judicial forum for these statutory claims.[211] Accordingly, Ms. West was not required to submit her FMLA and AS 18.80.220 claims to arbitration and Alaska Airlines' motion to dismiss on this basis will be denied.[212]

### 4. Failure to State a Claim for Relief

Alaska Airlines separately contends that Ms. West's state law disparate treatment and intentional infliction of emotional distress claims should be dismissed for failure to state a claim upon which relief can be granted.[213] As discussed above, the Court concluded that the RLA preempts Ms. West's claim for intentional infliction of emotional distress[214]; accordingly, it considers here only whether Ms. West adequately pled her disparate treatment claim under Alaska law.

Pursuant to the United States Supreme Court's holdings in *Ashcroft v. Iqbal* and

---

[210] Docket 9-1 at 5.

[211] *Wright*, 525 U.S. at 80; *see also Bernard v. Alaska Airlines, Inc.*, 367 P.3d 1156, 1165 (Alaska 2016) ("Even assuming that the agreement contains, by its reference to general policies and codes of conduct, 'an explicit incorporation of the statutory anti-discrimination requirements' of Alaska law, we could not find a 'clear and unmistakable' waiver of the employee's right to pursue state law claims in state court when the employer retains a unilateral right to modify or eliminate the language on which the waiver is based." (footnote omitted)).

[212] To the extent that Ms. West's breach of the implied covenant of good faith and fair dealing claim is premised on these statutory violations, she was also not required to submit that claim to arbitration. *See supra* notes 167–79 and accompanying text.

*See also Bernard*, 367 P.3d at 1158; *Lingley v. Alaska Airlines, Inc.*, 373 P.3d 506, 510 (Alaska 2016), *reh'g denied* (June 29, 2016). The Alaska Supreme Court has concluded that language substantially identical to that at issue here did not demonstrate a "clear and unmistakable" intent to waive a judicial forum for claims based on Alaska statutory rights — including a claim for breach of the implied covenant of good faith and fair dealing. *See Bernard*, 367 P.3d at 1162.

[213] Docket 8 at 39–42; *see* Fed. R. Civ. P. 12(b)(6).

[214] *See supra* notes 181–97 and accompanying text.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 37 of 40

*Bell Atlantic Corp. v. Twombly*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[215] In support of her disparate treatment claim, Ms. West's Complaint simply states that she "has been treated in a disparate manner on the basis of her disability" and that "[o]ther employees who do not have a disability are treated more favorably."[216] The Complaint does not explain how Ms. West was treated less favorably than other employees; it also does not identify any other employees who were treated more favorably. In her opposition to the motion to dismiss, Ms. West identifies an employee who was allegedly treated more favorably than her.[217] However, when deciding a Rule 12(b)(6) motion to dismiss, "[r]eview is limited to the complaint; evidence outside the pleadings . . . cannot normally be considered."[218] In any event, Ms. West has not explained how she was treated less favorably than the employee identified. Therefore, Ms. West's disparate treatment claim under state law has not been sufficiently pleaded in the Complaint. However, this claim will be dismissed without prejudice and with leave to amend.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Alaska Airlines' Motion to Dismiss at Docket 8 is DENIED in part and GRANTED in part as follows:

The Motion to Dismiss Count I, alleging retaliation and interference in violation of

---

[215] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[216] Docket 1 at 11, ¶¶ 66–67.

[217] Docket 14 at 7; Docket 15 at 6 ¶ 42.

[218] *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir.1993) (quoting *Farr v. United States*, 990 F.2d 451, 454 (9th Cir.1993)).

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 38 of 40

the FMLA, is DENIED.

The Motion to Dismiss Count II, alleging discrimination in violation of the ADAAA, is GRANTED for failure to exhaust administrative remedies; the dismissal of this count is with prejudice and without leave to amend.

The Motion to Dismiss Count III, alleging discrimination in violation of AS 18.80.220(a)(1), and Count V, alleging breach of the duty to engage in the interactive process and reasonably accommodate her disability in violation of AS 18.80.220, is DENIED.

The Motion to Dismiss Count IV, alleging disparate treatment in violation of AS 18.80.220, is GRANTED for failure to state a claim; the dismissal is without prejudice and with leave to amend.

The Motion to Dismiss Count VI, alleging breach of the implied covenant of good faith and fair dealing, is DENIED insofar as Ms. West alleges that Alaska Airlines breached the covenant by committing certain statutory violations[219]; the motion is GRANTED with prejudice and without leave to amend insofar as Ms. West alleges that Alaska Airlines breached the covenant by violating the CBA itself.

The Motion to Dismiss the intentional infliction of emotional distress claim is GRANTED with prejudice and without leave to amend.

Within 14 days of the date of this order, Ms. West may file an amended complaint consistent with the terms of this order or a notice that she will proceed without Count IV. Alaska Airlines' answer shall be due 14 days thereafter.

---

[219] The motion is denied insofar as Ms. West alleges violations of the FMLA and state law, but granted as to alleged violations of the ADAAA.

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 39 of 40

DATED this 6th day of December, 2018 at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

Case No. 3:18-cv-00102-SLG, *West v. Alaska Airlines, Inc.*
Order re Motion to Dismiss
Page 40 of 40